The next case for argument is 22-2257, GUI Global Products v. Apple. Let me reiterate the point and I will ask Ms. Oliver as well to confirm that if we were hypothetically to affirm the first case that we just heard in Samsung, then this case would go away or be mooted out. Is that right? I don't know offhand when collateral estoppel would kick in. Certainly, Gracie Ducato wouldn't tell there's finality, but at the end of the day when it shakes out, the claims have been invalidated and we're at the end of the road, then they're just invalid. I have not looked into two at the same time. All the claims covered in the Apple case are included in the Samsung case. Actually, I don't have a list, but that's not correct. One of them challenged all the claims. I thought Samsung was the one that challenged all claims and Apple challenged a subset of those claims. And I believe Your Honor is correct. So in other words, one would not, taking that down its logical road, there would still not be a total overlap. No, I don't think there's a total overlap. I think Samsung is a larger mass, and therefore if somehow we were to affirm all of those conclusions in Samsung, that would moot out the argument here. I mean, if we're affirming the invalidity of all the claims in one case, we'd have to do it twice. I'm going to argue on the assumption that we're not going to get there. Bless you. You're free to do that. Please proceed. So turning to Apple, different prior art. There are two different, I'm going to spend most of my time on the 021, 077, and 320. The 020 had, and those are, the primary reference there is Goonlock and then Lee. So it's Goonlock-Lee is the primary combination. For the 020, the primary reference is Bebeau, and it's combined with Goonlock. So there are some overlapping arguments, but most of them are different. All right. So what you're going to do, Goonlock and Lee, for? Correct. I'm going to spend most of my time there since it impacts three of the patents. But if I have time, we'll cover Bebeau as well. All of the unpatentability determinations for the 021, 077, and 320 rise or fall on whether it was obvious to modify Goonlock in view of Lee's unique figure 12 device. Of the 15 or plus embodiments in Lee, there's a single embodiment in figure 12 which has a switch 470. And the importance of switch 470 was switch 470 is what Apple and the board used to find the switching device, which is in all of the claims. Switching device is in all of the claims. The difference is for the 020, the electronic device, the case of the electronic device protects the case of the switching device. For the other three, the case of the switching device protects the case of the electronic device. However, the board went to lengths in discussing the wireless charging versus the physical contacts of Goonlock. And so be that. But it did not state any motivation to modify Goonlock in view of Lee's figure 12. And what's required is a motivation to achieve the patented invention, not just a general motivation to combine with wireless charging. And my friend may say there was another theory. We addressed it in our reply brief. And if she says that, then I will address it in about time permitting. But that was Apple's theory. And we have many, many sites from the record. They put quotes around the word switch when they're talking about switch 470. That's exactly what the board did. And that was the switch that was found. Again, I apologize to the board. I guess I may be misunderstanding completely, but I understood that Apple's argument was that a person skilled in the art would have modified Goonlock to use the coil and switch shown in the figure 12 because those components are part of Lee's inductive charging circuit. Why is that wrong? That is what they've said here on appeal, but they're not a part of... Lee has, as I mentioned, 16 different embodiments. Wireless charging does not require a switch 470. The reason there's a switch 470 in figure 12 is because that's a very unique invention on its own to where it has a dual-use transducer coil. So for the figure 12 device, unlike all the other devices in Lee, and they're unlike all other wireless charging devices in the world, has in figure 12, they take the charging coil and that's also the speaker coil. That's that dual-use transducer coil. It's a unique configuration. The board just made no finding as to why any of that. The only reason why you have a switch 470 is because of you have that dual-use coil because switch 470 tries to isolate the coil so you don't have interference from the power. We say, and I think the board should agree, that to combine with Lee's figure 12, there needs to be motivation to use switch 470. That's not a necessary element of wireless charging. Lee itself shows that because Lee itself shows that all of its other embodiments don't have that. This is a very unique device and it was picked in hindsight so they could find a switch, but there's no articulation of motivation by the board to do that. Can you point us to the board's opinion where it includes that analysis of the two combinations? It's extended. It's appendix 87 through 98, 154 through 165, and 222 through 237. In most cases, it's very, very similar, but it goes at length to talk about how wireless charging might be more reliable, how wireless charging might make for something that's more compact, all these different things that the board discusses, which separately, and I don't think we'll have time to get to it, but it's separately brief, Gwee has pointed out the incorrectness of all those justifications for replacing a well-known, well-accepted, perfectly reliable contact charging with wireless charging. But be that as may, the board still, in all those pages, you will not find, and I don't any place where the board has said there's a motivation to combine, and to say that just simply by justifying wireless charging, that that somehow pulls in Lee's Figure 12 device, is not a proper statement of what motivation to combine requires. It's a motivation to combine to achieve the patented invention. I'm looking at page 87 and 88. Does the patent owner call out this Figure 12 thing? Does the patent owner call it out? I presume they must have, because that's what your argument is today. Well, when you say, I'm not exactly sure, Your Honor, and I apologize, what you mean by call it out, what the patent owner argued was, essentially, Samsung argued for wireless charging. Samsung did not really justify the need for this unique Figure 12 device. I'm sorry, Apple, my apologies. This unique Figure 12 device, and they may be able to point somewhere in their brief they did, but the board did not adopt or endorse, the board did not use those as a motivation. And I apologize for the pages, but it's hard to prove a negative, but the board did not that switch and that unique Figure 12 device. Apple's own briefing, besides this idea of just it carries along with wireless charging, which is simply not correct, nor is that something that the board found. Nor is that something the board found. That's just simply Apple's after-the-fact justification for what the board did. The board never said, well, we found wireless charging, therefore, somehow that carries along this unique Figure 12 device. Well, I think I'm looking at the correct portion of the board's opinions, starting at 85, maybe, and going on for 10 pages, discussing all of the arguments and relying on Dr. Toliat. Was he relevant to this discussion? Dr. Toliat was Wee's technical expert, Your Honor. Right. So, they seem to discuss it in some detail. They discussed the pluses and minuses of... They had discussed the parties' arguments and, in some cases, their evaluations of those arguments for and against wireless charging at length, but they don't discuss any motivation for this unique Figure 12 device. What about, look at page 97, where they explicitly talk about your argument on Figure 12 and their agreement with the petitioner's arguments. Is that something different, or isn't that relevant to what you're telling me about? Well, we argued that the Figure 12 device would result in energy loss, and they refuted that, but that is not a motivation to use the unique Figure 12 device, just if they didn't buy Gwee's argument, that it would cause... That it was an inefficient system. So, you're not complaining that the petitioner didn't make the argument. You're complaining that the PTAB did not adopt, embrace, or articulate. I don't believe the petitioner made the argument, either. I think they focused on wireless charging in general, but if they can... And I don't recall them pointing out in their response brief where they did argue for a particular Figure 12 device. My read of the argument was that they just said it simply carries through with the idea of wireless charging in general, but I think my statement was if they're able to point to something in their brief, the board did not adopt that as its own. I certainly have read those opinions carefully. I do not see that. That's a threshold question that applies to all of the claims. In the 021, 077... In those three. Correct. In those three. With respect to... You're in your rebuttal time, so you want to... There are just a couple. With Bebeau, there is no substantial evidence of Bebeau having a switching device. This operational mode is not a switching device, and we explain that in our brief. And then with Bebeau, there is simply no substantial evidence for this backup laser printer. It's just complete, after the fact, it's just complete reverse engineering to try to get Is that the 020, Pat? That's in the 020. Those are all Bebeau. And then lastly, the court, this is hopefully one clear for the court, there's one where with Bebeau, the lid has to be configured to the switching device, and what Apple relied on and what the board relied on was a flat planar lid, which isn't configured to anything. I'll reserve the rest of my time for Bebeau. Thank you.  Good morning. Good morning, Your Honors. Could you start with the question we've been starting with, which is the effect of what we resolve in the first case, how it impacts this case. Do you have a view on that? Yes. So the Samsung case challenged all of the claims that are at issue. Apple's IPR has challenged a subset. So if the court were to affirm in Samsung's case, then that would moot out the issues in this case. Thank you. I'd like to begin by addressing the IPRs involving the 021, 077, and 320 patents where my friend began. And the primary issue here is this motivation to combine GunBlock's clamshell case with Lee's inductive charging, including Lee's Figure 12 and Switch 470. The motivation to use Switch 470 is on the face of Lee itself because it's part of Lee's Figure 12 circuitry. In other words, Lee already did the work of combining the Switch and the dual-purpose coil in an inductive charging system. And there's no need to show a separate motivation to combine elements that are already combined together in the prior art. Now with respect to Lee's board, I mean, a lot of your friend's complaints or concerns are with the board having failed to say certain things. Did the board say anything about what you present as kind of a self-evident proposition? Sure. Yes. And I think there's more details, particularly why one of Skill in the Art would have used Figure 12 as opposed to other embodiments as well. So I think it's helpful to look at Appendix pages 93 through 95. There's some earlier findings on Appendix 87 as well, but I think 93, beginning at 93, is helpful. So on Appendix 93, the board is addressing one of the benefits that's brought about by this combination, and that is a compact form factor. And the board here relies on the testimony of Apple's expert, specifically paragraph 44. And that explains why one of Skill in the Art would have used Figure 12. Because like Gundlach, the Lee reference was seeking a charging solution that achieved a reduction of size and weight. And Lee achieved that goal by using this single dual-purpose coil that serves two functions, and that allowed Lee to reduce the size and weight and minimize the additional hardware that would be needed there. And so Dr. Cooperstock explained that Lee's Figure 12 avoids having this separate dedicated inductive charging coil that would introduce unnecessary bulk to the design. So Lee's Figure 12 is particularly consistent with the smaller form factor that was desired by the Gundlach reference. And so the board addresses this at Appendix page 93. Again, they cite the top of 94. They cite Dr. Cooperstock's paragraph 44. And then they go through and explain some of that, too. So the next sentence at the top of 94 says, Lee describes a charging solution for wireless headsets that achieves a reduction of size and weight. And so again, I think that's the reasoning that the board was using here based on its citations to the experts' paragraphs 44. And then similar reasoning later when you look at the interoperability benefit that was a separate benefit discussed and found by the board. That also relies on Apple's expert testimony there, paragraph 45. And that also, again, discusses the potential size penalty of avoiding additional hardware. And that's a benefit of using Figure 12's dual-purpose coil that eliminates that additional hardware. So I think that provides a motivation to use Figure 12 as opposed to other embodiments. And again, with respect to Switch 470, because it's already part of Figure 12, there's no reason to provide a separate motivation for the Switch in particular. So I'll turn next to the 020 patent. And I believe the first issue that my friend briefly addressed was the motivation to add the recess to Babott's primary module. And that is to protect the detachable headset. And adding a recess to the headset allows the headset to nestle in place to help prevent it from falling off when it's dropped or jostled. So the primary module has a recess, and the headset fits in there to prevent it from falling off. This helps achieve one of the expressly stated goals in the prior art, which was to avoid an untimely detachment that would lead to loss of the headset. Now, Gwee's primary argument on appeal is that it would make it less readily available to do that. But the board considered that in its analysis and found that that would not dissuade an artisan from making this combination. And you want to give us a cite to the board's opinion on that? Yes. So the board addresses this particularly at appendix page 32 and 33. There, the board says this would more effectively secure the headset and would be further advantageous. So the next issue that my friend briefly addressed on the O2O patent was this backup laser pointer. Here Apple relied on a third reference, the Li reference, which is a Bluetooth earphone with a laser pointer on it. And the board found that an artisan would have added a laser pointer to the headset on the Babat-Gunblot combination to provide the user with a backup option when the laser pointer on the primary module is unavailable. So if you've left it in your car, if the battery's dead, something like that. This is useful for business presentations. And the board made these findings from appendix page 50 through 54. And Gwee's argument here is simply that you wouldn't add one because the primary module has a laser pointer. But that misses the motivation that we've provided, which is a backup option when the primary option is not available. The last issue that my friend raised is with respect to whether Gunblot discloses a lid with a recess. This affects only certain dependent claims of the O2O and O2O, and then affects the independent claims of the 077 and 320 patents. And here there is substantial evidence supporting the board's decision. This is found most easily, I think, by just looking at Gunblot's figure 18B, which is at 2480 in the appendix. That's just the plain version of the figure without any annotations. And you can see from the drawing that there is a recess in the lid. And that's what the board relied on. Apple's expert also explained that clamshell cases typically had recessed lids to accommodate a headset or headphones that are being stored therein. And he provided other examples in the art of clamshell cases that were used to hold headsets. And that's at appendix 1789, paragraphs 90 and 91 of his declaration, which the board discussed at appendix page 43. So unless there are any additional particular questions from the court, we would sum up by just saying that Gwee's arguments have repeatedly challenged the board's factual findings, but they failed to provide any basis to overturn those findings, particularly under substantial evidence review. So unless the court has further questions, we would request that the court affirm. Thank you. Your Honor, my friend pointed to pages 93 and 94 for motivation to combine with the figure 12 device. But that's simply not stated there. What is stated is that the board is addressing a separate issue about Dr. Toley, a Gwee's expert, had argued that this was inconsistent with a compact design. And the board credited Dr. Cooper's testimony that it was consistent with a compact design. But that was not stated as a motivation to make the combination. That's just simply discounting a contra-argument that Dr. Toley had made. With respect to paragraphs on page 94, the interoperability, that interoperability issue had nothing to do with figure 12 or a dual-use transducer coil. That had to do with whether wire charging was more interoperable than wireless charging. It had nothing to do with figure 12. So if that's what Apple is relying on, that does not show any motivation to combine. There's certainly no statement of it. With respect to this statement about the recess in the primary module, my friend talked about the recess. There are also claims that are drawn to the, not a recess, but a lid. And the theory was that you put the device in a closed device, and that's completely at odds with everything that Bobo is made to be, which is made to be something that avoids needing to put it inside a container. And so the arguments I heard with respect to recess, I heard no arguments to defending this very far-fetched theory of putting Bobo's device in a clamshell device, in a clamshell case. With respect to the recess of the lid, my friend said, look at figure 18. We just asked the court to look at figure 18. It's a flat, planar lid. It's a flat, planar lid. And I think my friend was just paraphrasing. My friend said, we think there's a recess there. The claim limitation is a recess that's configured to the switching device. So there's nothing configured to any device about a flat, planar lid. It just simply hangs in the air above the other device. And my friend said that their expert had mentioned other devices have it, but the theory that Apple advanced and the theory that the board found was not that it would be obvious to have a lid configured, what it found was that that was met. And so whether other devices might do that or not was not the theory, nor is it what the board relied upon. So that just simply is not useful for the court. I thank both sides. Thank you, Ron. I can't wait a minute. That concludes our proceedings. Thank you.